UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Dr. DELORA MOUNT | CIVIL ACTION No. 25-1377 |
| VERSUS | JUDGE: SARAH S. VANCE |
| LOUISIANA STATE UNIVERSITY HEALTH SCIENCES CENTER, et al. | MAGISTRATE JUDGE: KAREN WELLS ROBY |

**PLAINTIFF'S OPPOSITION
TO DEFENDANTS' PARTIAL MOTIONS TO DISMISS**

Plaintiff respectfully submits this memorandum in opposition to Defendants' partial motions to dismiss (R. Docs. 8 and 11).

**Introduction and Factual Background**

Plaintiff Dr. Delora Mount is a national expert in craniofacial and pediatric plastic surgery. R. Doc. 1 at ¶ 1and 21. She specializes in the repair of birth defects and other facial abnormalities in children and infants. *Id.*

In 2021, Defendants recruited Dr. Mount to move from the University of Wisconsin to Louisiana to work at Children's Hospital New Orleans. *Id.* at ¶¶ 2, 25, 41, 127. They asked Dr. Mount to serve in dual role: an administrative role as Section Chief of Pediatric Plastic Surgery at Children's Hospital and a clinical role as a surgeon with faculty duties at LSUHSC. *Id.* at ¶ 2.

In 2022, Dr. Mount moved to New Orleans and began her new job. *Id.* at ¶¶ 2, 25. After that point, the problems began. For example, Defendants hired Dr. Mount in part to mentor a younger, male surgeon. But Dr. Mount learned that in FY 2023, Defendants paid the younger male surgeon $61,000 *more* than Dr. Mount – even though he had eighteen-years' *less* experience. *Id.* at ¶¶ 2, 4, 5

1

Then, in the summer of 2023, Dr. Mount injured her wrist during a fall caused by an ongoing herniated disc and nerve compression in her leg. R. Doc. 1 at ¶ 6. The wrist injury required surgery to repair, and the underlying spinal issue required another surgery and medical leave. *Id.*

On January 5, 2024, Defendants approved Dr. Mount for FMLA leave for her final surgery. *Id.* at ¶ 7. <u>Three days later</u>, on January 8, 2024, Dr. Mount was handed a dismissal letter, saying that "you are hereby given notice that your appointment will not be renewed" and that her last day of work would be July 9, 2024. *Id.*

But Defendants would not let her go back to work at all. On March 17, 2024, Dr. Mount updated her employers that she was going to be cleared to return to work in April. *Id.* at ¶ 8. That same day, Defendants emailed Dr. Mount to tell her that she was being placed on administrative leave with no return date before the end of her contract. *Id.* They gave no explanation other than that they "wanted to give [her] enough recovery time." *Id.*

After Defendants fired her, Dr. Mount found a position as a surgeon and professor at the UNC School of Medicine in North Carolina. *Id.* at ¶ 11. But because of her termination, there is only one doctor in the entire state of Louisiana who offers certain kinds of reconstructive surgery for children.[1] *Id.* at ¶ 12.

On July 3, 2025, Dr. Mount filed suit, bringing a range of federal and claims involving gender, age, and disability discrimination, pay equity, FMLA violations, and breach of implied contractual covenants. R. Doc. 1.

Defendants responded with two partial motions to dismiss (R. Docs. 8 and 11), seeking to dismiss fewer than half of Plaintiff's claims and forms of relief. The chart below details the

---

[1] *See* https://www.lsuprsresidency.com/faculty ("presently the only reconstructive surgeon to offer microtia reconstruction in the entire state of Louisiana.").

arguments that Defendants raise against some of Plaintiff's claims. In addition to these, LSUHSC argues that diversity jurisdiction is unavailable and that it is not subject to punitive damages.

| Claims in Complaint | LSUHSC | LCMC |
|---|---|---|
| Title VII | **Failure to state retaliation claim** | **Failure to state retaliation claim** |
| Title VII | *No Motion to Dismiss as to discrimination claim* | *No Motion to Dismiss as to discrimination claim* |
| Equal Pay Act | *No Motion to Dismiss* | *No Motion to Dismiss* |
| Americans with Disabilities Act | **11th Amend. Sovereign Immunity** | *No Motion to Dismiss* |
| Rehabilitation Act | *No Motion to Dismiss* | *No Motion to Dismiss* |
| Louisiana Human Rights Act | **11th Amend. Sovereign Immunity** | *No Motion to Dismiss* |
| Age Discrimination in Employment Act | *No claim in Complaint* | *No Motion to Dismiss* |
| Family and Medical Leave Act | **11th Amend. Sovereign Immunity** | *No Motion to Dismiss* |
| Louisiana Employment Discrimination Law | **11th Amend. Sovereign Immunity** | **Non-profit exemption** |
| Breach of Implied Covenant of Good Faith and Fair Dealing | **11th Amend. Sovereign Immunity** | **Failure to state claim** |

As explained herein, Dr. Mount does not oppose some of Defendants' arguments. The others, however, should be rejected. Accordingly, for the reasons set forth below, Defendants' motions should be denied with respect to whether the complaint stated a claim for Title VII retaliation and breach of the implied covenant of good faith and fair dealing.

## Legal Standard

Dismissal under Rule 12(b)(6) is disfavored and rarely granted. *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). Under the 12(b)(6) standard, all well-pleaded facts must be viewed in the light most favorable to the plaintiff. *Hale v.*

*King*, 642 F.3d 492, 498-99 (5th Cir. 2011) (*en banc*). Plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim. *Id*. Courts generally confine their analysis under Rule 12(b)(6) to the complaint and its proper attachments, which "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id*., *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The well-pleaded facts must permit the court to infer more than the mere possibility of misconduct. *Id*.

## Legal Analysis

**A.    Responses to Issues Raised by LSUHSC (R. Doc. 8)**

*Sovereign Immunity*

LSUHSC contends that sovereign immunity bars Dr. Mount's state-law claims (LEDL, LHRA, and implied covenant of good faith and fair dealing) and two of Dr. Mount's federal claims (ADAA and FMLA). R. Doc. 8-1 at 4-7. Plaintiff will withdraw these claims against LSUHSC, and this aspect of LSUHSC's motion can be denied as moot.

*Diversity Jurisdiction*

Next, LSUHSC argues that diversity jurisdiction is unavailable in this case because a state is not considered a "citizen" for purposes of diversity jurisdiction. Dr. Mount does not dispute this, but the issue is currently moot. Neither defendant has challenged Dr. Mount's claims under three federal statutes: the Equal Pay Act, the Rehabilitation Act, and the Age Discrimination in Employment Act. Accordingly, this Court's jurisdiction is not in question at this juncture. This aspect of LSUHSC's motion can be denied as moot.

*Punitive Damages*

LSUHSC also contends that Dr. Mount cannot recover punitive damages against the Board of Supervisors, given that it is a governmental agency. R. Doc. 8-1 at 8. Plaintiff does not dispute this, and the Complaint did not say otherwise.[2] Accordingly, this portion of LSUHSC's motion can be denied as moot.

**B.     Response to Issue Raised by Both LSUHSC and LCMC (R. Docs. 8 and 11)**

*Dr. Mount Has Sufficiently Stated a Claim for Retaliation under Title VII*

In her Complaint, Plaintiff pleads a claim against Defendants for retaliation under Title VII. R. Doc. 1, Count 1. To sufficiently allege a *prima facie* case of retaliation, Plaintiff must allege that (1) she engaged in an activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal connection exists between the protected activity and the adverse employment action. *Hudson v. Lincare, Inc.*, 58 F. 4th 222, 231 (5th Cir. 2023). Protected activity can consist of either (1) opposing any practice made an unlawful employment practice by Title VII (the opposition clause) or (2) making a charge, testifying, assisting, or participating in any manner in an investigation proceeding, or hearing under Title VII (the participation clause). 42 U.S.C. § 2000e-3(a); E.E.O.C. v. Rite Way Serv., Inc., 819 F.3d 235, 239 (5th Cir. 2016). Neither LSUHSC nor LCMC dispute that Plaintiff has alleged that numerous adverse employment actions, including but not limited to failure to promote and termination, occurred here. Rather, Defendants attempt to attack Plaintiff's allegations as to protected activity and causation. *See* R. Doc. 11-1 at 6-7 and

---

[2] Plaintiff's Complaint requests in the Relief Requested section that "judgment be entered against Defendants and the Court grant the following [forms of relief] as appropriate"—among them, "a judgment awarding punitive damages." R. Doc. 1 at ¶ 250. Plaintiff clarifies that she limits her request for a judgment awarding punitive damages to LCMC.

5

R. Doc. 8-1 at 9-10. As discussed below, Defendant's arguments fail, and Plaintiff has properly pleaded a retaliation claim under Title VII.

First, with respect to protected activity, Plaintiff alleges that (1) [i]n a July 2023 performance review of a subordinate, Dr. Mount reported inappropriate behavior including comments regarding a colleague taking a maternity leave." (R. Doc. 1 at ¶ 155); and (2) "[s]he also reported a subordinate surgeon's experience with sexism/harassment from a male orthopedic surgery colleague" and that "[d]uring th[at] discussion, Dr. Mount was told that this behavior had happened in the past, and he was well-known for the misbehavior" (¶ 156) and that "this senior surgeon had undergone a PIP and 'talking to' after this identical behavior in the past, but was allowed to remain credentialed in good standing at CHNOLA" (¶ 157). Defendants do not dispute that informal complaints to an employer may constitute protected activity, and such complaints certainly can.[3] Further, Defendants' arguments that they do not know the "nature of" the inappropriate behavior or the "source of the alleged comments" or "whether the conduct amounted to an unlawful employment practice under Title VII" ignore the applicable pleading standard under Rule 8.[4] Plaintiff's 36-page Complaint more than satisfies Rule 8's requirement of a "short and plain" statement of her claims. While the issues raised by Defendants as to the Title VII retaliation claim can be explored in discovery, they do not reflect a pleading deficiency and are not a proper basis for dismissal of the retaliation claims under Rule 12(b)(6). In addition, Defendants'

---

[3] *See, e.g., Rite Way Serv.,* 819 F.3d at 240; *Ford v. Amethyst Constr., Inc.,* No. CV 14-2617, 2016 WL 1312627, at *9 (W.D. La. Apr. 4, 2016); *Williams v. Racetrac Petroleum, Inc.*, 824 F.Supp.2d 723, 726 (M.D. La. 2010).

[4] Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a plaintiff's complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 8, a complaint need not provide "detailed factual allegations" but must simply provide the plaintiff's grounds for entitlement to relief. *See, e.g., Ankor Energy LLC v. Merit Mgmt. Partners I, L.P.,* No. CV 24-1953, 2024 WL 5246761, at *3 (E.D. La. Dec. 30, 2024) (citing *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citation omitted)).

arguments fail to construe all facts alleged in the light most favorable to Plaintiff, as is required on a 12(b) motion to dismiss. When the facts are so construed, they permit the reasonable inference that Plaintiff did engage in legally protected activity under Title VII—that in the summer of 2023, Plaintiff complained that a colleague was being treated unfairly due to her sex, that the "inappropriate behavior" she complained about was sex-based discrimination as it included negative comments about a colleague taking maternity leave, and that a male surgeon had treated a female subordinate surgeon unfairly through sexist behavior and sex-based harassment.

Defendants also argue that they cannot determine whether the conduct described amounted to an unlawful employment practice under Title VII. *See* R. Doc. 8-1 at 9 and R. Doc. 11-1 at 5. However, even if the conduct about which an employee complains was not, in fact, an unlawful employment practice under Title VII, the complaint may be nevertheless be protected provided that the employee had a good faith, reasonable belief that the conduct was illegal. *See, e.g., Rite Way Serv.,* 819 F.3d 235. Here, construing all of the allegations in Plaintiff's favor as is required, the Court could reasonably infer that Plaintiff reasonably believed that male surgeons making negative comments about a female colleague's maternity leave and engaging in sexist, harassing treatment of a female, subordinate surgeon, was illegal.

Second, with respect to causal connection, the causal link required to state a *prima facie* case for retaliation is less stringent than the "but for" standard; a Title VII retaliation plaintiff need not allege that the protected activity was the sole cause for retaliation, only that the two are "are not completely unrelated." *See, e.g., Williams v. B R F H H Shreveport, L.L.C.,* 801 F. App'x 921, 925 (5th Cir. 2020); *Besser v. Texas Gen. Land Off.*, 834 F. App'x 876, 882 (5th Cir. 2020). Plaintiff alleges that she made internal complaints of sex-based discrimination in the summer of 2023, that Defendants retaliated against her for reporting and opposing discrimination on the basis

7

of sex, and that she suffered adverse employment action. *See* R. Doc. 1 at ¶¶ 154-157 and Count 1 generally. In addition, Plaintiff alleges many facts relating to gender discrimination and retaliation at LSUHSC and CHNOLA—both against her and against other female employees.[5] All of these facts, when taken together and construed in the light most favorable to Plaintiff as is required, allow the reasonable inference that Plaintiff's complaints relating to gender discrimination were not "completely unrelated" to the adverse actions taken against her such that causation is satisfied.

For these reasons, LSUHSC and LCMC's motions to dismiss Plaintiff's Title VII retaliation claims should be denied.

C. <u>Response to Additional Issues Raised by LCMC (R. Doc. 11)</u>

*Louisiana Employment Discrimination Law*

LCMC moves to dismiss Plaintiff's claims against LCMC under the Louisiana Employment Discrimination Law (LEDL) pursuant to the non-profit exemption (R. Doc. 11-1 at

---

[5] For example, Dr. Mount alleges that Defendants denied her the opportunity for a promotion, paid her less than a far less experienced male colleague, terminated her contract, and placed her on administrative leave due to her sex. (R. Doc. 1 at ¶¶ 152-153), that CHNOLA received numerous complaints about sexist/harassing conduct by a senior male surgeon but allowed him to remain a credentialed surgeon with CHNOLA (*id.* at ¶¶ 156-157), that LSU's own Office of Internal Audit concluded in fall of 2021 that LSU's equal employment opportunity policies were inadequate, that there were major failures related to oversight and fairness of compensation, that LSU lacked a comprehensive compensation policy, that LSU engaged in the differential treatment of men and women, and that LSU's "promotions and hiring practices" did not "align with EEOC requirements[;]" and that the problems in the 2021 internal audit were corroborated by an extensive range of complaints of gender discrimination involving LSU and particularly the LSUHSC, including allegations by a female LSU Health director, complaints by another LSUHSC employee regarding gender-based harassment and discrimination and retaliation once she reported her concerns, a lawsuit by seven women against LSU alleging that the university violated Title IX and "repeatedly engaged in discriminatory, retaliatory, and other unlawful actions" when the women tried to report sexual misconduct on campus, public claims by four LSUHSC employees of discrimination and retaliation during their time at LSUHSC, and an independent investigation by Husch Blackwell resulting in a 150-page-long report concluding that the university had failed to properly report and investigate allegations of sexual misconduct (*id.* at ¶¶ 133-148).

3-4). Plaintiff will withdraw this claim, and so this portion of LCMC's motion can be denied as moot.

### *Plaintiff Has Sufficiently Stated a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing*

In her Complaint, Dr. Mount pleads a violation of the implied covenant of good faith and fair dealing. R. Doc. 1 at ¶¶ 242-246. LCMC does not dispute that there is an implied covenant of good faith and fair dealing in every contract in Louisiana.[6] LCMC likewise does not dispute that Dr. Mount was a contract employee, not an at will employee. *See* R. Doc. 1 at ¶¶ 51, 53. LCMC does not even dispute that Plaintiff has alleged sufficient facts to show that Dr. Mount's agreement was violated "with a dishonest or morally questionable motive."[7] Rather, LCMC moves to dismiss Plaintiff's implied covenant claim based on a single argument: that "Plaintiff has failed to identify or allege that any contract exists between Plaintiff and LCMC Health." R. Doc. 11-1 at 4 (citing R. Doc. 1 at ¶¶ 51, 53). That argument fails.

The only case cited by LCMC, *Barbe,* 705 So.2d 1210, does not stand for the proposition that a written contract between Plaintiff and Defendant is required for a breach of the implied covenant claim, only that an agreement (written or oral) is required for such a claim.[8] Dr. Mount has alleged abundant facts—all ignored by LCMC—supporting the liability of LCMC and the existence of an oral agreement with LCMC. For example, Plaintiff alleges that under the joint/dual

---

[6] *See* La. C. C. art.1983; *Bonanza International, Inc. v. Restaurant Management Consultants, Inc.*, 625 F. Supp. 1431, 1445 (E.D. La. 1986); *Grisaffi v. Dillard Dep't Stores, Inc.*, 43 F.3d 982, 983 (5th Cir. 1995); *Brill v. Catfish Shaks of America, Inc.*, 727 F. Supp. 1035, 1039 (E.D. La. 1989).
[7] *Barbe v. A.A. Harmon & Co.,* 705 So.2d 1210, 1220 (La. App. 4 Cir. 1998).
[8] In *Barbe,* in which defendants appealed a judgment following a jury verdict in an employee's favor (not a motion to dismiss or state law exception), there was a written employment contract between the plaintiff and the defendant company, and the court held that there was nothing that would support a finding of personal liability on the part of the individual shareholders and the evidence did not support the existence of an oral contract with these individuals. *See* 705 So.2d at 1225.

employer doctrine and/or the doctrine of the borrowed servant, she was an employee of both Defendants and LSUHSC and LCMC were both her employers under all relevant laws. R. Doc. 1 at ¶¶ 54-55. She also alleges detailed facts regarding the interwoven relationship between her, LSUHSC, and LCMC and the myriad ways in which LCMC controlled and shaped her employment from recruitment to termination. *See, e.g., id.* at ¶¶ 36-55.[9] Further, Plaintiff alleges that Defendants recruited her to leave her longtime personal and professional home in Wisconsin and come to Louisiana – where they proceeded to pay her less than her less-qualified male colleague and then fire her once they learned of her medical issues and need for medical care; that they "lur[ed] her away from Wisconsin and then engag[ed] in discriminatory pay practices[;]" that they "terminat[ed] her contract once she was approved for FMLA and plac[ed] her on administrative leave when she was cleared to return." These allegations, when taken as true and construed in the light most favorable to Plaintiff for purposes of LCMC's motion to dismiss as is

---

[9] Plaintiff alleges that the relationship between her, LSUHSC, and LCMC Health/CHNOLA was complex; LCMC Health employs physicians and staff and to fill additional staffing needs, LCMC Health's Children's Hospital entered into a services agreement with LSUHSC; and under this services agreement, LSUHSC agreed to provide physicians to fill certain needs at Children's Hospital. R. Doc. 1 at ¶¶ 36-38. Further, Plaintiff alleges that LCMC Health was the entity that recruited Dr. Mount, paid all recruitment expenses, and made all communications with her about the hire. *Id.* at ¶¶ 40-44. Likewise, LCMC negotiated and directly paid Dr. Mount's $30,000 signing bonus. *Id.* at ¶¶ 45-46. CHNOLA leaders were the primary decision-makers in Dr. Mount's hiring, handled and all salary negotiations, and only brought in LSU at the last minute at the time of the offer, telling Dr. Mount that it was for the best that her employment be routed through LSUHSC because it brought prestige and a faculty position, even though she really worked at CHNOLA. R. Doc. 1 at ¶¶ 47-50. Further, Plaintiff alleges LCMC Health/CHNOLA retained supervision and control over the doctors, and it controlled many aspects of Dr. Mount's job. *Id.* at ¶¶ 51-52. Indeed, Plaintiff alleges 31 specific examples of such control by LCMC. *Id.* at ¶¶ 52(i)-(xxxi). Further, Plaintiff alleges that she was told that there were a lot of people who were part of the decision not to renew her contract, specifically including Dr. Mark Kline (Senior Vice President, Physician-in-Chief and Chief Medical Officer, CHNOLA) (*id.* at ¶ 96) and thatthe meeting during which her employment was terminated was held at CHNOLA's offices (*id.* at ¶ 99).

required, are sufficient to support a claim for breach of the implied covenant of good faith and fair dealing.[10]

## Conclusion

For the reasons set forth herein, LSUHSC's partial motion to dismiss should be denied with respect to the Title VII retaliation claim, and the remainder of the motion can be denied as moot.

LCMC's partial motion to dismiss should be denied with respect to breach of the implied covenant of good faith and Title VII retaliation, and the remainder of the motion can be denied as moot.

In the alternative, should this Court find Plaintiff's Complaint deficient in any respect, she respectfully requests leave to amend the Complaint.[11]

Respectfully Submitted:

*/s/ William Most*
WILLIAM MOST, T.A. (La. Bar No. 36914)
DAVID LANSER (La. Bar No. 37764)
Most & Associates
201 St. Charles Ave., Ste. 2500, # 9685
New Orleans, LA 70170
Tel: (504) 509-5023
williammost@gmail.com
davidlanser@gmail.com

KERRY A. MURPHY (La. Bar No. 31382)
Kerry Murphy Law LLC
201 St. Charles Ave., Suite 2500
New Orleans, LA 70170
Telephone: (504) 603-1502
Facsimile: (504) 603-1503

---

[10] *See, e.g., Wagner v. Schlumberger Well Surveying Corp.,* No. CIV. A. 96-2270, 1997 WL 218209, at *2 (E.D. La. Apr. 30, 1997) (denying defendant's summary judgment motion where implied covenant claim was based on oral agreements made at the outset of employment, including defendant's promises that plaintiff would be compensated at a certain rate and she would be made a "full-time" employee after 90 days).

[11] *See* Fed. R. Civ. P. 15(a)(2); *Dussouy v. Gulf Coast Investment Corporation*, 660 F.2d 594, 597-598 (5th Cir. 1981).

Email: kmurphy@kerrymurphylaw.com

***Attorneys for Plaintiff, Dr. Delora Mount***