UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DELORA MOUNT | CIVIL ACTION |
| VERSUS | NO. 25-1377 |
| LOUISIANA STATE UNIVERSITY HEALTH SCIENCES CENTER THROUGH THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE, AND LOUISIANA CHILDREN'S MEDICAL CENTER (D/B/A CHILDREN'S HOSPITAL NEW ORLEANS/MANNING FAMILY CHILDREN'S) | SECTION "R" (4) |

## **ORDER AND REASONS**

Before the Court is defendants Louisiana State University Health Sciences Center, through the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSUHSC"), and Louisiana Children's Medical Center, doing business as Children's Hospital New Orleans/Manning Family Children's ("LCMC"), partial motions to

dismiss.[1] Plaintiff Dr. Delora Mount opposes the motions.[2] For the following reasons, the Court grants in part and denies in part the motions.

## I.     BACKGROUND

Dr. Delora Mount brings this case against LSUHSC and LCMC for alleged discriminatory actions and other wrongs during her brief employment. Dr. Mount alleges that, in 2021, LCMC recruited her to work at Children's Hospital New Orleans ("Children's"), serving as Section Chief of Pediatric Surgery at Children's and as a surgeon with faculty duties at LSUHSC.[3] She alleges that her employment was routed through LSUHSC, but that LCMC recruited her, communicated with her regarding her hiring, paid for her recruitment, negotiated and paid her signing bonus, and was the primary decision-maker in her hiring.[4] She further alleges that LCMC controlled many aspects of her job day-to-day, and that LSUHSC provided no office space, administrative support, nursing support, or day-to-day oversight of her job.[5]

---

[1]    R. Docs. 8, 11.
[2]    R. Doc. 13.
[3]    R. Doc. 1 at ¶ 2.
[4]    *Id.* at ¶¶ 36-54.
[5]    *Id.*

Dr. Mount states that she began this job in the summer of 2022.[6] A year later, in the summer of 2023, she alleges that she injured her hand and wrist during a fall caused by an underlying spinal condition.[7] She further alleges that the wrist injury required surgery, and that the spinal condition required surgery and medical leave.[8] She alleges that defendants were aware of her medical condition throughout the summer of 2023.[9] She further alleges that in November of 2023, they were aware that she would need spinal surgery and medical leave, and that she provided formal notice of this need on December 1, 2023.[10] She alleges that defendants approved her for Family and Medical Leave Act ("FMLA") leave on January 5, 2024, so she could undergo surgery.[11] On January 8, 2024, she allegedly received a "dismissal letter" during a meeting with LSUHSC employees, providing July 9, 2024 as her last day.[12] The letter allegedly stated "you are hereby given notice that your appointment will not be renewed."[13] Nonetheless, Dr. Mount states that she updated defendants regarding her medical clearance

---

6   *Id.* at ¶ 2.
7   *Id.* at ¶¶ 6, 76.
8   *Id.* at ¶ 6.
9   *Id.* at ¶ 82.
10  *Id.* at ¶¶ 82, 87.
11  *Id.* at ¶ 7.
12  *Id.* at ¶¶ 7, 91-93.
13  *Id.* at ¶ 7.

in March 2024, informing them that she could return to work in April of that year.[14] She alleges that defendants informed her via email that she was being placed on administrative leave with no return to work before the July 9 contract end date.[15] She further alleges that the rationale defendants provided for this was that they "wanted to give [her] enough recovery time."[16]

Plaintiff additionally alleges that a key aspect of her recruitment was defendants' desire for Dr. Mount to mentor Dr. Masoumy, a surgeon who had recently completed his clinical fellowship.[17] Dr. Mount alleges that despite this, she was paid less than he was paid.[18] She additionally alleges that defendants promoted him over her, despite her qualification for and expressed interest in the position.[19]

Dr. Mount also alleges that prior to being dismissed and placed on administrative leave, she reported and opposed discrimination on the basis of sex.[20] Specifically, she alleges that she reported inappropriate behavior, including comments regarding a colleague taking maternity leave during a July 2023 performance review of a subordinate, and that she reported

---

[14] *Id.* at ¶ 8.
[15] *Id.*
[16] *Id.*
[17] *Id.* at ¶ 4.
[18] *Id.* at ¶¶ 5, 158-163.
[19] *Id.* at ¶¶ 66-71.
[20] Id. at ¶¶ 152-157.

4

another surgeon's experience with sexism/harassment from a male surgery colleague.[21] Plaintiff alleges that defendants retaliated against her for these actions.[22]

On July 3, 2025, plaintiff filed this suit against LCMC and LSUHSC.[23] Plaintiff brings claims for violations of: Title VII of the Civil Rights Act of 1964; the Equal Pay Act; the Americans with Disabilities Act; the Rehabilitation Act; the Louisiana Human Rights Act; the Age Discrimination in Employment Act; the Family and Medical Leave Act; and Louisiana Employment Discrimination Law.[24] Plaintiff additionally brings a claim for the breach of the implied covenant of good faith and fair dealing.[25]

Defendants LCMC and LSUHSC now move to dismiss portions of plaintiff's complaint.[26] Plaintiff responded to the motions to dismiss, withdrawing some claims and opposing the dismissal of others.[27]

The Court considers the parties' arguments below.

---

[21] *Id.*
[22] *Id.*
[23] R. Doc. 1.
[24] *See generally id.*
[25] *See generally id.*
[26] R. Docs. 8, 11.
[27] R. Doc. 13.

5

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)), and "that, if true, 'raise a right to relief above the speculative level.'" *Franklin v. Regions Bank*, 976 F.3d 443, 447 (5th Cir. 2020) (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

### A. Retaliation Under Title VII

Title VII makes it unlawful to discriminate against an employee who has opposed an employment practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, plaintiff must

6

show that: "(1) [she] engaged in conduct protected by Title VII; (2) [she] suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action." *Hudson v. Lincare, Inc.*, 58 F.4th 222, 231 (5th Cir. 2023). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff need not establish a *prima facie* case of retaliation, but she "must plead sufficient facts on all of the ultimate elements to make her case plausible." *Jenkins v. La. Workforce Comm'n*, 713 F. App'x 242, 244 (5th Cir. 2017) (quoting *Chhim v. Univ. of Texas*, 836 F.3d 467, 470 (5th Cir. 2016) (internal quotation marks omitted)).

An employee has engaged in protected activity if she has either "(1) 'opposed any practice made an unlawful employment practice' by Title VII [the opposition clause] or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII [the participation clause]." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (citing 42 U.S.C. § 2000e-3(a)). The opposition clause does not require that the complained-of employment practice be unlawful so long as the employee "demonstrate[s] that she had at least a 'reasonable belief' that the practices she opposed were unlawful." *Id.* (quoting *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981)). Thus, internally complaining about an employment practice may constitute

7

protected activity, so long as the complainant "reasonably believed the employment practice to be unlawful." *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 240 (5th Cir. 2016).

In her complaint, plaintiff alleges that she reported inappropriate behavior, including comments regarding a colleague's taking maternity leave, during a July 2023 performance review of a subordinate,[28] and that she reported another surgeon's experience with sexism and harassment from a male surgery colleague.[29] This is sufficient to allege that she engaged in protected activity. *See, e.g., Foster v. Solvay Pharmaceuticals, Inc.*, 160 F. App'x 385, 388 (5th Cir. 2005) (holding that an employee engaged in protected activity when the employee reported sex discrimination to human resources).

As to the second element, in the retaliation context, an adverse employment action includes "discrimination in hiring, firing, compensation, or in the 'terms, conditions, or privileges' of employment" but "does not permit liability for *de minimis* workplace trifles." *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 502-05 (5th Cir. 2023). Here, plaintiff's allegations include that she was denied the opportunity for a promotion, that she was ultimately

---

[28] R. Doc. 1 at ¶ 155.
[29] Id. at ¶ 156.

8

terminated, and that she was placed on leave.[30] These actions go beyond "workplace trifles." *Id.* Plaintiff's complaint therefore adequately alleges that she suffered a materially adverse action. *See Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006) (termination is an "adverse employment action" under Title VII); *Alvarado v. Texas Rangers*, 492 F.3d 605, 612 (5th Cir. 2007) (denial of promotion is an "adverse employment action" under Title VII).

Finally, to sufficiently plead a causal link between her conduct and the alleged retaliation, plaintiff must allege facts that plausibly suggest that "the employment decision and [her] protected activity were not wholly unrelated." *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (cleaned up). Temporal proximity is one way to plausibly show the link, but not the only way. *See Paul v. Elayn Hunt Corr. Ctr.*, 666 F. App'x 342, 348 (5th Cir. 2016). Moreover, to establish a causal link, plaintiff must "demonstrate that the decision maker had knowledge of the protected activity." *Tureaud v. Grambling State Univ.*, 294 F. App'x 909, 914 (5th Cir. 2008) (citing *Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999)).

Plaintiff does not sufficiently connect the adverse actions to the protected activity. Plaintiff provides no information regarding when and to

---

30     Id. at ¶ 152.

9

whom she reported her colleague's experience with sexism and harassment. Plaintiff additionally provides no specifics regarding to whom she reported the other inappropriate behavior in July 2023. Plaintiff's complaint lacks necessary information to plausibly "demonstrate that the decision maker had knowledge of the protected activity." *Id.*

Moreover, the events alleged are not sufficiently close in time to plausibly allege a causal link by timing alone. Plaintiff was not passed over for promotion until November 2023, four months after this event. She was not "dismissed"[31] until January 2024, more than five months after she allegedly reported the inappropriate behavior. And plaintiff was not placed on administrative leave until after she was terminated. This too was more than five months removed from the performance review. The events are not close enough in time to, without more, plausibly show causation for retaliation purposes. *See Everett v. Cent. Miss., Inc. Head Start Program*, 444 F. App'x 38, 47 (5th Cir. 2011) (finding that a five-month period "is not the kind of 'very close' temporal proximity" recognized to establish causality); *cf. Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020) (noting that the Fifth Circuit has previously held that a period of two-

---

<sup>31</sup> Plaintiff equates termination with the non-renewal of her contract. *See* R. Doc. 1 at ¶ 7.

and-a-half months, a period of two months, and a period of six-and-a-half weeks between the protected act and adverse employment action "are close enough to show a causal connection" in holding that such events "must be very close in time to establish causation by timing alone"). Four and six-month lapses are too long to establish a causal connection when plaintiff relies on timing alone.

Accordingly, the Court grants defendants' motions to dismiss as to this claim without prejudice.

## B. Breach of Implied Covenant of Good Faith and Fair Dealing

Under Louisiana law, good faith performance is considered an "implied requirement of every contract." *Grisaffi v. Dillard Dep't Stores, Inc.*, 43 F.3d 982, 983 (5th Cir. 1995) (citing La. Civ. Code art. 1983). This necessarily requires there be a contract between the parties. Here, LCMC argues that no contract exists between it and plaintiff. In her complaint, plaintiff invokes the joint/dual employer doctrine and the borrowed servant doctrine. Plaintiff also argues that there was an oral agreement between her and LCMC, but this allegation is absent from her complaint.

Under the borrowed servant doctrine, "[o]ne may be in the general service of another, and, nevertheless, with respect to particular work, may be

transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person with all the legal consequences of the new relation." *Total Marine Servs., Inc. v. Director, Office of Worker's Comp. Programs*, 87 F.3d 774, 777 (5th Cir. 1996) (quoting *Standard Oil Co. v. Anderson*, 212 U.S. 215, 220 (1909)) (emphasis omitted). The doctrine was created to hold a borrowing employer liable under *respondeat superior* for the negligence of any employee it had borrowed over which it had control. *Standard Oil Co. v. Anderson*, 212 U.S. 215 (1909). The doctrine has also been applied to shield the borrowing employer from tort liability. *Gaudet v. Exxon Corp.*, 562 F.2d 351, 359 (5th Cir. 1977).

Under the "joint employer" doctrine, an individual may be the employer of two different employers at the same time. "Joint employer status is generally found in an 'arrangement between employers to share an employee's services.'" La. Prac. Employment Law §18:1 (Nov. 2024) (citing 29 C.F.R. § 791.2 (1993)).

Plaintiff's theory is that although her employment contract was with LSUHSC, the circumstances of her employment satisfies one of the above outlined doctrines to find that LCMC was also her employer. Additionally, plaintiff now argues that she had an oral agreement with LCMC, but this does

12

not appear in her complaint. Plaintiff appears to believe that satisfaction of either the joint/dual employer or borrowed servant doctrines is enough to allege a contractual duty of good faith and fair dealing as to LCMC. However, plaintiff points to no cases where an implied contractual duty is imposed under either of these doctrines, and the Court has found no cases supporting this theory. Because plaintiff has not alleged an employment contract with LCMC, and has provided no support for the notion that either the joint/dual employer or borrowed servant doctrines provide a basis for imposing liability for a breach of the implied covenant of good faith and fair dealing, the Court must dismiss this claim.

### C. Withdrawn Claims

Plaintiff has withdrawn her claims under the Louisiana Employment Discrimination Law as to both defendants. Plaintiff has also withdrawn her claims under the Americans with Disabilities Act, the Louisiana Human Rights Act, and the Family and Medical Leave Act as to defendant LSUHSC. Plaintiff has additionally withdrawn her claim for breach of implied covenant of good faith and fair dealing as to defendant LSUHSC. Accordingly, the Court dismisses defendants' motions to dismiss these claims as moot.

## D. Diversity Jurisdiction

Defendant LSUHSC additionally argues that diversity jurisdiction is unavailable in this matter because the LSUHSC Board of Supervisors is considered an arm of the State of Louisiana, and a state is not a citizen under 28 U.S.C. § 1332.[32] But the Court's original jurisdiction over claims in this case was not based solely on diversity; plaintiff's federal claims provide federal question jurisdiction. Because the Court has original jurisdiction over plaintiff's federal law claims, this Court may exercise supplemental jurisdiction over plaintiff's state law claims if they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). This typically means that each separate claim "must derive from a common nucleus of operative fact[s]" and be such that a plaintiff "would ordinarily be expected to try them in one judicial proceeding." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). All of plaintiff's claims arise out of the same series of events and are such that one "would ordinarily . . . expect[] to try them in one judicial proceeding." *Id.* Accordingly, the Court will exercise supplemental jurisdiction over plaintiff's state law claims. As the Court is satisfied it has federal question and supplemental jurisdiction over plaintiff's claims, the

---

[32] R. Doc. 8-1 at 7-8.

Court will not address LSUHSC's arguments regarding the diversity of the parties.

### E. Punitive Damages against LSUHSC

LSUHSC argues that plaintiff cannot recover punitive damages against the Board of Supervisors. This is true. *See Muslow v. Bd. of Supervisors of Louisiana State Univ., & Agric. & Mech. Coll.*, 2024 WL 5246605, at *8 (E.D. La. Dec. 30, 2024) ("exception of government entities from Title VII punitive damages applies to state universities, like LSU"); *Aucoin v. Kennedy*, 355 F. Supp. 2d 830, 841 (E.D. La. 2004) ("the EPA authorizes an award of liquidated damages . . . [but] contains no other provision authorizing a punitive award"); *Barnes v. Gorman*, 536 U.S. 181, 189 ("punitive damages may not be awarded . . . in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act"). Plaintiff does not dispute this. Therefore, the Court grants LSUHSC's motion as to punitive damages.

### F. Leave to Amend

District courts must dismiss with leave to amend "unless the defect is simply incurable, or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Young v. U.S. Postal Serv. ex rel. Donahoe*, 620 F. App'x 241, 245 (5th Cir. 2015) (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000)). The presumption is that courts

should dismiss a complaint only after "affording every opportunity" to the plaintiff to state a claim unless it would be futile. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curium); *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003). An amendment is futile if "it would fail to survive a Rule 12(b)(6) motion." *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014).

This is plaintiff's first complaint, and the defects in it may be curable. *See Young*, 620 F. App'x at 245. Under the presumption that leave to amend "should be freely granted," the Court grants plaintiff's request for leave to amend. *Marucci Sports*, LLC, 751 F.3d at 378.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motions to dismiss as to plaintiff's claim for retaliation in violation of Title VII against both defendants and plaintiff's claim for breach of the implied duty of good faith and fair dealing against LCMC.

The Court DISMISSES plaintiff's claim for retaliation in violation of Title VII WITHOUT PREJUDICE and with LEAVE TO AMEND the complaint within fourteen days of this order.

The Court DISMISSES plaintiff's claim for breach of the implied duty of good faith and fair dealing against LCMC WITHOUT PREJUDICE and with LEAVE TO AMEND the complaint within fourteen days of this order.

The Court DISMISSES defendants' motions as to plaintiff's withdrawn claims (plaintiff's LEDL claim against both defendants; and plaintiff's ADA, LHRA, FMLA, and breach of the implied covenant of good faith and fair dealing claims against LSUHSC) AS MOOT.

The Court GRANTS LSUHSC's motion as to punitive damages and DISMISSES plaintiff's claim for punitive damages against LSUHSC WITH PREJUDICE.

New Orleans, Louisiana, this __19th__ day of December, 2025.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE