UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DELORA MOUNT                                      CIVIL ACTION

VERSUS                                              NO. 25-1377

LOUISIANA STATE UNIVERSITY          SECTION "R" (4)
HEALTH SCIENCES CENTER
THROUGH THE BOARD OF
SUPERVISORS OF LOUISIANA
STATE UNIVERSITY AND
AGRICULTURAL AND
MECHANICAL COLLEGE, AND
LOUISIANA CHILDREN'S MEDICAL
CENTER (D/B/A CHILDREN'S
HOSPITAL NEW
ORLEANS/MANNING FAMILY
CHILDREN'S)

## <u>ORDER AND REASONS</u>

Before the Court are the partial motions to dismiss plaintiff Dr. Delora

Mount's amended complaint of defendants Louisiana State University

Health Sciences Center, through the Board of Supervisors of Louisiana State

University and Agricultural and Mechanical College ("LSUHSC"), and

Louisiana Children's Medical Center, doing business as Children's Hospital

New Orleans/Manning Family Children's ("LCMC").[1]  Specifically, LSUHSC

moves to dismiss Dr. Mount's Title VII retaliation claim and LCMC moves to

---

[1]      R. Docs. 25, 26.

dismiss Dr. Mount's Title VII retaliation claim and her claim for breach of the implied covenant of good faith and fair dealing.[2]  Plaintiff Dr. Delora Mount opposes the motions.[3]  For the following reasons, the Court denies the motions.

## I.    BACKGROUND

Dr. Delora Mount sued LSUHSC and LCMC for alleged discriminatory actions and contractual wrongs during her brief employment and subsequent termination by defendants.  Dr. Mount alleges that, in 2021, LCMC recruited her to work at Children's Hospital New Orleans ("Children's"), serving as Section Chief of Pediatric Surgery at Children's and as a surgeon with faculty duties at LSUHSC.[4]  She alleges that her employment was routed through LSUHSC, but that LCMC Health, through Children's Hospital, had an oral agreement with Dr. Mount to work as a physician at Children's Hospital.[5]  She additionally alleges that LCMC recruited her, communicated with her regarding her hiring, paid for her recruitment, negotiated and paid her signing bonus, and was the primary

---

[2]    *See* R. Docs. 25, 26.
[3]    R. Doc. 29.
[4]    R. Doc. 24 at ¶ 2.
[5]    *Id*. at ¶¶ 36-58.

decision-maker in her hiring.[6]  She further alleges that LCMC controlled many aspects of her day-to-day job, including the number of clinics per week, appointment times, call schedule, administrative meeting schedule, and billing.[7]  She alleges that LCMC provided her office space.[8]  She alleges that her direct day-to-day supervision was Surgeon-in-Chief Dr. Arjmand, and Business Administrator Michelle Botello, and that these individuals expressed that they were independently her "boss."[9]  She additionally alleges that LCMC Health had the ability to make decisions on doctor compensation.[10]  She further alleges that LSUHSC provided no office space, administrative support, nursing support, or day-to-day oversight of her job.[11]

Dr. Mount states that she began this job in June 2022.[12]  A year later, in the summer of 2023, she alleges that she injured her hand and wrist during a fall caused by an underlying spinal condition.[13]  She further alleges that the wrist injury required surgery, and that the spinal condition required surgery and medical leave.[14]  She alleges that defendants were aware of her

---

[6]     *Id.*
[7]     *Id.* at ¶ 55.
[8]     *Id.*
[9]     *Id.*
[10]    *Id.*
[11]    *Id.* at ¶ 56.
[12]    *Id.* at ¶ 59.
[13]    *Id.* at ¶¶ 78-79.
[14]    *Id.* at ¶¶ 80-81.

3

medical condition throughout the summer of 2023.[15]  She further alleges that in November of 2023, they were aware that she would need spinal surgery and medical leave, and that she provided formal notice of this need on December 1, 2023.[16]  She alleges that defendants approved her for Family and Medical Leave Act ("FMLA") leave on January 5, 2024, so she could undergo surgery.[17]  On January 8, 2024, she allegedly received a "dismissal letter" during a meeting with LSUHSC employees, providing July 9, 2024 as her last day.[18]  The letter allegedly stated "you are hereby given notice that your appointment will not be renewed."[19]  Nonetheless, Dr. Mount states that she updated defendants regarding her medical clearance in March 2024, informing them that she could return to work in April of that year.[20]  She alleges that defendants informed her via email that she was being placed on administrative leave with no return to work before the July 9 contract end date.[21] She further alleges that the rationale defendants provided for this was that they "wanted to give [her] enough recovery time."[22]

---

[15]     *Id.* at ¶ 85.
[16]     *Id.* at ¶¶ 85, 90.
[17]     *Id.* at ¶ 91.
[18]     *Id.* at ¶¶ 94-96.
[19]     *Id.* at ¶ 96.
[20]     *Id.* at ¶ 114.
[21]     *Id.* at ¶ 115.
[22]     *Id.* at ¶ 117.

Plaintiff additionally alleges that a key aspect of her recruitment was defendants' desire for Dr. Mount to mentor Dr. Masoumy, a surgeon who had recently completed his clinical fellowship.[23]  Dr. Mount alleges that despite this, she was paid less than he was paid.[24]  She additionally alleges that defendants promoted him over her, despite her qualification for and expressed interest in the position.[25]

Dr. Mount also alleges that before being dismissed and placed on administrative leave, she reported and opposed discrimination on the basis of sex.[26]  Specifically, she alleges that during a July 2023 performance review of a subordinate, she reported the subordinate's disparaging comments regarding a physician's assistant's ("PA") taking maternity leave and that the subordinate declined to allow the PA additional time off for the maternity leave.[27]  Specifically, she alleges that the subordinate stated "oh well, we'll see about [the PA] returning … if she returns" and rolled her eyes.[28]  She also alleges that she wrote to Sonia Carter, the Director of Ambulatory and Social Services regarding the performance review on July 17, 2023.[29]  She alleges

---

[23]  *Id.* at ¶ 4.
[24]  *Id.* at ¶¶ 5, 175-181.
[25]  *Id.* at ¶¶ 69-77.
[26]  *Id.* at ¶¶ 152-192.
[27]  *Id.* at ¶¶ 158-161.
[28]  *Id.* at ¶ 161.
[29]  *Id.* at ¶¶ 158-159.

that she informed Carter that the review was "unfortunately not positive reviews" and she offered to provide Carter "more granular examples or additional comments."[30]

She additionally alleges that in November 2023 she reported another surgeon's experience with sexism/harassment from a male senior orthopedic surgery colleague.[31]  Mount alleges that the conduct included inappropriately demeaning, angry behavior in the operating room, and subsequent angry, unprofessional text messages.[32]  Dr. Mount alleges that she perceived this treatment to be gender-specific based on how that colleague treated male colleagues.[33]  She alleges that she reported this conduct to Dr. David Yu, Surgeon in Chief, including in a November 17, 2023 meeting with Dr. Yu and Dr. Tony Gonzales, Service Line Chief of Orthopedic Surgery.[34]  Dr. Yu allegedly reacted with "again?" and informed Mount that the colleague was well-known for this misbehavior and that it had previously happened.[35]  She was allegedly told that this colleague, a senior surgeon, had undergone a PIP and received a "talking to" after identical past behavior.[36]  She further alleges

---

[30]    *Id.* at ¶ 159.
[31]    *Id.* at ¶¶ 163.
[32]    *Id.* at ¶ 164.
[33]    *Id.* at ¶ 165.
[34]    *Id.* at ¶ 167.
[35]    *Id.* at ¶ 168.
[36]    *Id.*

that she was told that the matter had been dropped and the surgeon was allowed to remain in good standing.[37]  She alleges that Dr. Yu told her to "just let it go."[38]  Dr. Mount alleges that she did not "let it go."  Instead, she alleges that she made a formal report of the matter and directed the surgeon who had allegedly experienced the sexism/harassment to make a BE SAFE report for the record.[39]  In addition to Drs. Yu and Gonzales, Dr. Mount alleges that other senior leaders including Dr. Mark Kline, Senior Vice-President, Chief Medical Officer and Physician-in-Chief at Children's were aware of Dr. Mount's reporting of the incidents.[40]   Plaintiff alleges that defendants retaliated against her for these actions, beginning with giving her the cold shoulder and culminating in her placement on administrative leave and termination.[41]

On July 3, 2025, plaintiff filed this suit against LCMC and LSUHSC.[42] Defendants then moved to dismiss a selection of plaintiff's claims.[43]  Plaintiff withdrew multiple claims,[44] and the Court dismissed two of her claims

---

[37]  *Id.*
[38]  *Id.*
[39]  *Id.* at ¶ 169.
[40]  *Id.* at ¶ 170.
[41]  *Id.* at ¶ 155.
[42]  R. Doc. 1.
[43]  R. Docs. 8, 11.
[44]  *See* R. Doc. 13.

without prejudice to plaintiff's filing an amended complaint: her claim for violation of the implied covenant of good faith and fair dealing against LCMC and her Title VII retaliation claim against both defendants.[45]  Plaintiff timely filed an amended complaint.[46]  Defendants once again move for the dismissal of those two claims.[47]  Plaintiff opposes the motions.[48]

The Court considers the parties' arguments below.

## II.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)), and "that, if true, 'raise a right to relief above the speculative level.'" *Franklin v. Regions Bank*, 976 F.3d 443, 447 (5th Cir. 2020) (quoting *Twombly*, 550 U.S. at 555).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The Court must accept all well-pleaded facts as true

---

[45]    R. Doc. 19.
[46]    R. Doc. 24.
[47]    R. Docs. 25, 26.
[48]    R. Doc. 29.

and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

## III.   DISCUSSION

### A.   Retaliation Under Title VII

Title VII makes it unlawful to discriminate against an employee who has opposed an employment practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, plaintiff must show that: "(1) [she] engaged in conduct protected by Title VII; (2) [she] suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action." *Hudson v. Lincare, Inc.*, 58 F.4th 222, 231 (5th Cir. 2023). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff need not establish a *prima facie* case of retaliation, but she "must plead sufficient facts on all of the ultimate elements to make her case plausible." *Jenkins v. La. Workforce Comm'n*, 713 F. App'x 242, 244 (5th Cir. 2017) (quoting *Chhim v. Univ. of Texas*, 836 F.3d 467, 470 (5th Cir. 2016) (internal quotation marks omitted)).

An employee has engaged in protected activity if she has either "(1) 'opposed any practice made an unlawful employment practice' by Title VII [the opposition clause] or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII [the participation clause]." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (citing 42 U.S.C. § 2000e-3(a)). The opposition clause does not require that the complained-of employment practice be unlawful as long as the employee "demonstrate[s] that she had at least a 'reasonable belief' that the practices she opposed were unlawful." *Id.* (quoting *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981)). Thus, internally complaining about an employment practice may constitute protected activity, as long as the complainant "reasonably believed the employment practice to be unlawful." *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 240 (5th Cir. 2016) (finding that "[t]he statute, case law, and interest in uniformity and ease of application support applying the "reasonable belief" standard to retaliation cases involving both proactive and reactive opposition").

As discussed in this Court's previous order, plaintiff has sufficiently alleged that she engaged in protected activity and that she suffered an

adverse employment action.[49]  Regarding the first element, plaintiff alleges that in July 2023, she reported derogatory comments regarding a colleague's taking maternity leave.[50]  She alleges that on July 17, 2023, she wrote to Sonia Carter, the Director of Ambulatory and Social Services regarding the "not positive" report, and offered to provide Carter more examples and comments regarding the report.[51]  As detailed above, she additionally alleges that she reported another surgeon's experience with sexism/harassment from a senior male surgery colleague to multiple senior leaders, including the Surgeon in Chief Dr. Yu during a November 17, 2023 meeting with Drs. Yu and Gonzales.[52]  During that meeting she alleges she was informed that the colleague was known for such misbehavior, had undergone a PIP and talking to in the past but that the matter had been dropped and he was allowed to remain in good standing.[53]  She alleges that she was told by Dr. Yu that she should just "let it go."[54]  She alleges that she instead made a formal report of the matter and directed the surgeon who had allegedly experienced the sexism/harassment to make a BE SAFE report for the record.[55]  These

---

[49]    *See* R. Doc. 19.
[50]    R. Doc. 24 at ¶¶ 158-161.
[51]    *Id.*
[52]    *Id.* at ¶¶ 163-68.
[53]    *Id.*
[54]    *Id.*
[55]    *Id.* at ¶ 169.

assertions sufficiently allege that plaintiff engaged in protected activity by reporting sexually discriminatory and harassing behavior and saw that follow-up actions were taken.  *See, e.g., Foster v. Solvay Pharmaceuticals, Inc.*, 160 F. App'x 385, 388 (5th Cir. 2005) (holding that an employee engaged in protected activity when the employee reported sex discrimination to human resources); *Dixon v. Moore Wallace, Inc.*, 236 F. App's 936, 937 (5th Cir. 2007) (holding that sending a letter to human resources complaining of racial discrimination was protected activity).

Defendants argue that plaintiff has not demonstrated that she held an objectively reasonable belief that the conduct she opposed was unlawful under Title VII.  But plaintiff alleges that she *saw* that the treatment that the colleague subjected male and female colleagues to was different.  This is more than merely "perceiving" gender-based differences as defendants argue.  Plaintiff's allegations are sufficient.

As to the second element, plaintiff's allegations include that she was ultimately terminated, and that she was placed on leave.[56]  These allegations satisfy the second element.  *See Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006) (termination is an "adverse employment action" under Title VII); *Yates v. Spring Indep. Sch. Dist.*, 115 F.4th 414, 420

---

[56]    Id. at ¶ 152.

(5th Cir. 2024) (placement on administrative leave can constitute an adverse employment action).

Finally, to sufficiently plead a causal link between her conduct and the alleged retaliation, plaintiff must allege facts that plausibly suggest that "the employment decision and [her] protected activity were not wholly unrelated." *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (cleaned up). Temporal proximity is one way to plausibly show the link, but not the only way. *See Paul v. Elayn Hunt Corr. Ctr.*, 666 F. App'x 342, 348 (5th Cir. 2016). Moreover, to establish a causal link, plaintiff must "demonstrate that the decision maker had knowledge of the protected activity." *Tureaud v. Grambling State Univ.*, 294 F. App'x 909, 914 (5th Cir. 2008) (citing *Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999)).

In her amended complaint, plaintiff sufficiently connects the adverse actions to the protected activity. Plaintiff alleges that she directly reported the conduct to senior members of LSUHSC and Children's Hospital, including Drs. Yu and Gonzalez, and Sonia Carter.[57] She additionally alleges that that other senior leaders including Dr. Mark Kline, Senior Vice-President, Chief Medical Officer and Physician-in-Chief at Children's, were

---

[57]    R. Doc. 24 at ¶¶ 158-159, 167.

aware of Dr. Mount's reporting of the incidents of concern.[58]  She further alleges that Dr. Yu responded with "again?" and told her to drop it, indicating that senior leadership was already well aware of the behavior.[59]  Plaintiff's complaint plausibly "demonstrate[s] that the decision maker had knowledge of the protected activity."  *Id.*

Additionally, the events alleged are sufficiently close in time to plausibly allege a causal link by timing alone.  At a minimum, she alleges that she reported sexually discriminatory conduct on November 17, 2023, and that she was told she would be terminated in January 2024, only two-months after the November report.  These actions are sufficiently close in time to allege a causal link.  *See Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020) (noting that the Fifth Circuit has previously held that a period of two-and-a-half months, a period of two months, and a period of six-and-a-half weeks between the protected act and adverse employment action "are close enough to show a causal connection" in holding that such events "must be very close in time to establish causation by timing alone").

---

[58]    *Id.* at ¶ 170.
[59]    *Id.* at ¶ 168.

Because plaintiff has plausibly alleged each element of a Title VII retaliation claim, the Court denies defendants' motions to dismiss as to this claim.

## B. Breach of Implied Covenant of Good Faith and Fair Dealing

Under Louisiana law, good faith performance is considered an "implied requirement of every contract." *Grisaffi v. Dillard Dep't Stores, Inc.*, 43 F.3d 982, 983 (5th Cir. 1995) (citing La. Civ. Code art. 1983). This necessarily requires there be a contract between the parties. Here, plaintiff alleges an oral contract between her and LCMC. Nonetheless, LCMC argues that plaintiff's amended complaint contains only a "conclusory allegation" that there was an oral contract between LCMC and Dr. Mount.

Plaintiff's allegations are more than conclusory. While the amended complaint does allege that "LCMC Health, through CHNOLA, had an oral agreement with Plaintiff to work as a physician at the Children's Hospital in exchange for pay," the amended complaint does not stop there.[60] Plaintiff additionally alleges that LCMC recruited her, negotiated her signing bonus, was a principal decision maker in her hiring, provided her office space, and controlled many aspects of her day-to-day job, including the number of

---

[60]    R. Doc. 24 at ¶ 41.

clinics per week, appointment times, call schedule, administrative meeting schedule, and billing.[61]  She further alleges that LSUHSC provided no office space, administrative support, nursing support, or day-to-day oversight of her job.[62]  Plaintiff even included an image of a check written out to her from Children's Hospital which she alleges constituted a signing bonus.  Taken together, these facts adequately support the allegation that LCMC and Dr. Mount had an oral contract.  Dr. Mount has not merely provided a "threadbare recital" of the elements of the claim as LCMC argues. Accordingly, as the Court finds that plaintiff has adequately alleged an enforceable contract, plaintiff's claim stands.

## IV.  CONCLUSION

For the foregoing reasons, the Court DENIES defendants' motions to dismiss.

New Orleans, Louisiana, this __16th__ day of March, 2026.

_Sarah Vance_

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[61]    *Id.* at ¶¶ 36-58.
[62]    *Id.* at ¶ 56.

16